IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ALEXANDER SNOWDEN, | |
| Plaintiff, | |
| v. | Civil No. 23-2493 (RBK/EAP) |
| STANDARD INSURANCE COMPANY, | **OPINION** |
| Defendant. | |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon two motions by Defendant Standard Insurance Company ("Standard" or "Defendant"): (1) Motion to Dismiss Counts II–VI of Plaintiff's Complaint ("First Motion" or "First Mot.") (ECF No. 15); and (2) Motion to Dismiss Counts II–V of Plaintiff's Amended Complaint ("Second Motion" or "Second Mot.") (ECF No. 18). For the reasons set forth below, Defendant's First Motion (ECF No. 15) is **DENIED AS MOOT**, and Defendant's Second Motion (ECF No. 18) is **GRANTED**.

**I.     BACKGROUND**

    **A.     Factual Background**

Alexander Snowden ("Snowden" or "Plaintiff") was the policyholder of an individual disability income insurance policy ("Policy") issued by Defendant. (ECF No. 16, Am. Compl. ¶ 4). The Policy provided that Plaintiff would receive disability insurance benefit payments in the event he became "Totally Disabled" as a result of injury or sickness. (*Id.* ¶ 6).

On November 5, 2020, Plaintiff was involved in a serious car accident in which he suffered severe injuries to his head and neck after hitting his head on the windshield. (*Id.* ¶¶ 10,

1

14). Prior to the accident, Plaintiff was employed as an insurance sales agent earning roughly $28,000 per year, not including additional monthly commissions. (*Id.* ¶ 8). As a result of his injuries, Plaintiff stopped working on or about the day of his accident. (*Id.* ¶ 11). Plaintiff then applied for individual disability income benefits under the Policy "following his last day of work." (*Id.* ¶ 13).

Plaintiff alleges that from November 5, 2020, to the present, he "has been disabled within the meaning and pursuant to the terms of his Policy coverage." (*Id.* ¶ 16). Specifically, he alleges that he has been "unable to perform, on a sustained basis, the Substantial and Material Duties of his Regular Occupation" as defined in the Policy. (*Id.*). In addition to his head and neck injuries, Plaintiff alleges that he has also suffered cognitive dysfunction in a host of areas including short-term memory loss, attention recall, and speech disruption. (*Id.* ¶ 17). Plaintiff alleges that he has also been diagnosed with Post-Traumatic Stress Disorder ("PTSD") and Major Depressive Disorder as a result of his injuries. (*Id.* ¶ 27). Plaintiff states that he cooperated with the Defendant "in all respects, provided proper proof of loss in support of his claim, and otherwise complied with the terms and conditions of the Policy regarding the filing and maintenance of the claim." (*Id.* ¶ 34).

On November 29, 2021, Defendant notified Plaintiff that his claim for disability benefits under the Policy was denied. (*Id.* ¶ 28). On May 27, 2022, Plaintiff submitted a timely written appeal of that adverse determination. (*Id.* ¶ 31). On August 18, 2022, Defendant issued a final administrative denial of Plaintiff's claim for disability benefits. (*Id.* ¶ 32). Plaintiff claims that Defendant's denial of Plaintiff's disability insurance benefits "is unreasonable and unsupported by substantial evidence," is the result of numerous "procedural irregularities in its claim handling," and thus constitutes a breach of its duty to pay Plaintiff his benefits. (*Id.* ¶¶ 39–40).

### B. Procedural History

Plaintiff filed an initial complaint in the Superior Court of New Jersey, Camden County, on April 6, 2023. (ECF No. 1, Ex. B). On May 5, 2023, Defendant timely removed the case to this Court. (*Id.*, Notice of Removal). On June 12, 2023, Defendant filed its First Motion to Dismiss. (ECF No. 15, First Mot.). On June 22, 2023, Plaintiff responded by filing an Amended Complaint without seeking leave of the Court. (ECF No. 16, Am. Compl.). On July 20, 2023, rather than disputing Plaintiff's filing of the Amended Complaint, Defendant filed a Second Motion to Dismiss. (ECF No. 18, Second Mot.). On August 9, 2023, Plaintiff filed a brief opposing the Second Motion. (ECF No. 21, Pl.'s Opp. Br.). On August 28, 2023, Defendant filed its reply. (ECF No. 23, Def.'s Reply Br.). The matter is fully briefed and ripe for review.

## II. JURISDICTION

This Court has jurisdiction pursuant to the federal diversity and removal statutes, 28 U.S.C. §§ 1332(a) and 1441(a). Defendant timely removed this matter from the Superior Court of New Jersey, Camden County, on May 5, 2023, alleging jurisdiction under § 1332(a) by claiming complete diversity of citizenship and an amount in controversy exceeding $75,000. (Notice of Removal ¶ 5). Plaintiff is a citizen of New Jersey, and Defendant is a citizen of Oregon. (*Id.* ¶ 4; Am. Compl. ¶ 1–2). The parties do not contest citizenship, personal jurisdiction, or the amount in controversy. *See* (Am. Compl. ¶ 3 (agreeing that "[j]urisdiction is proper in this Court")). Because § 1332(a)'s complete diversity and amount-in-controversy requirements are met, the Court has subject-matter jurisdiction to hear this dispute.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts

3

accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (quoting *Iqbal*, 556 U.S. at 678). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## IV. DISCUSSION

Defendant has two motions to dismiss currently pending before the Court. *See* (ECF Nos 15, 18). Because Defendant filed its Second Motion to Dismiss in response to Plaintiff's Amended Complaint—which was itself filed in response to Defendant's First Motion to Dismiss—the Court will deny Defendant's First Motion to Dismiss as moot. *See Fish Kiss LLC v. N. Star Creations*, LLC, Civ. No. 17-8193, 2018 WL 3831335, at *13 (D.N.J. Aug. 13, 2018) ("Because the Complaint at which the First Motion to Dismiss was directed has now been

supplanted by two subsequent Amended Complaints, the Court will deny the First Motion to Dismiss as moot.")

Plaintiff's Amended Complaint is the operative complaint, and we focus our analysis on Defendant's Second Motion. Plaintiff's Amended Complaint asserts five Counts against Standard, consisting of one breach of contract claim and four allegedly related tort claims, all under New Jersey state law.[1] (Am. Compl. ¶¶ 44–112). Defendant's Second Motion responds only to the tort claims in Counts II–V, arguing that Plaintiff "asserts the same allegations as for his breach of contract claim, adds boilerplate accusations culled from the general corpus of disability insurance law, and appends conclusory generic legal assertions of the elements of the cause of action." (Second Mot. at 1). The Court will review each Count in turn.

### A.    Count II: Bad Faith

Plaintiff does not allege facts sufficient to support a claim of bad faith. To allege bad faith in the insurance context under New Jersey law, a plaintiff must allege facts to plausibly suggest that the insurer (1) did not have a "fairly debatable" reason for its failure to pay the claim, and (2) that the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 Fed. App'x. 594, 599 (3rd Cir. 2004) (citing *Pickett v. Lloyds*, 621 A.2d 445, 454 (N.J. 1993)). "If a claim is 'fairly debatable,' no liability in tort will arise." *Pickett*, 621 A.2d at 453.

In order to meet the "fairly debatable" standard, a plaintiff must establish as a matter of law a right to summary judgment on the substantive claim; a plaintiff who cannot do so is not

---

[1] Because the parties do not dispute choice of law, the Court adopts the parties' presumption that New Jersey state law applies to each claim arising from the alleged breach of the Policy.

entitled to assert a claim for bad faith—including at the motion to dismiss stage.[2] *See Fuscerello v. Combined Ins. Group, Ltd.*, Civ. No. 11-723, 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011) (dismissing plaintiff's bad faith claim on a motion to dismiss where insurer's reason for refusing to pay presented disputed issues of material fact) (citing *Pickett*, 621 A.2d at 454); *Ketzner*, 118 Fed. App'x at 599 (stating that "if there are material issues of disputed fact . . . an insured cannot maintain a cause of action for bad faith.").

Here, Plaintiff alleges that Defendant acted in bad faith by denying Plaintiff's claim for insurance benefits because it sought to "avoid payment and reduce the impact on Defendant's financial situation." (Am. Compl. ¶ 55). Plaintiff argues that his claim and coverage under the Policy "is incontestable and not fairly debatable." (*Id.* ¶ 56). Plaintiff argues further that Defendant, in making its denial, "ignored and recklessly disregarded" the medical evidence that Plaintiff presented. (*Id.* ¶ 60). Rather than plead plausible facts supporting this position, however, Plaintiff merely makes repeated conclusory assertions that Defendant's denial of Plaintiff's claim for benefits "is not contestable and is not fairly debatable" and that "Defendant lacked a fairly debatable reason for its failure to pay." (*Id.* ¶¶ 63–64). These assertions, on their own, are not sufficient to establish as a matter of law that Defendant lacked its own reasons for denying the claim. *See Pickett*, 621 A.2d at 454; *see also Iqbal*, 556 U.S. at 678.

---

[2] To adequately plead a claim of bad faith, Plaintiff must first establish that he is entitled to summary judgment on the underlying contract dispute in Count I—that is, that Defendant's reasons for denying Plaintiff's claim are *not* debatable as a matter of law. *See Pickett*, 621 A.2d at 453. In other words, the "fairly debatable" standard for bad faith claims requires only that the Court identify the existence of material issues of disputed fact in the underlying contract dispute. Although the Court recognizes that the *Pickett* standard presents unique difficulties for bad faith claims at the motion to dismiss stage, *see Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401–02 (D.N.J. 2000) (doubting "the wisdom" of the *Pickett* standard), we are nevertheless compelled to apply the substantive law of New Jersey as determined by the state's highest court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Underpinning Plaintiff's bad faith claim is a contractual dispute with Defendant over the Policy. Specifically, the dispute centers on whether Plaintiff's injuries irrefutably compelled Defendant to consider Plaintiff "Totally Disabled" under the Policy's terms.[3] Given that this underlying dispute remains unresolved, it follows that, absent facts in the Amended Complaint indisputably establishing otherwise, the parties still reasonably debate the reasons why Defendant denied Plaintiff's claim. Because Plaintiff's Amended Complaint fails to show that Defendant's reasons for denying Plaintiff's claim do not remain a material issue of disputed fact, it also follows that Defendant's reasons to deny the claim must be considered "fairly debatable." *See Ketzner*, 118 Fed. App'x at 599; *Pickett*, 621 A.2d at 454. As such, Plaintiff cannot maintain a claim for bad faith, *see id.*; *Fuscerello*, 2011 WL 4549152, at *5, and we dismiss Count II.

### B. Count III: Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing in Count III fails for the same reasons as its bad faith claim in Count II. Under New Jersey law, a claim for breach of the implied covenant of good faith and fair dealing is "tantamount" to a claim for bad faith. *Veyhl v. State Farm Fire & Cas. C.*, Civ. No. 21-10112, 2021 WL 6062304, at *2 (D.N.J. Dec. 22, 2021) (citing *Pickett*, 621 A.2d at 451 (recognizing that "[m]ost jurisdictions have characterized a cause of action for bad-faith failure to pay an insured's claim as a tort that arises out of the implied duty of an insurance company to deal fairly and act in good faith in processing the claims of its policyholder")). That is, "[w]here a party has breached a specific

---

[3] For its part, Defendant states that, in rendering its denial of Plaintiff's claim, it "analyzed [Plaintiff's] medical records, communicated with [Plaintiff], considered his statements regarding his condition, spoke with his medical providers to obtain their opinions of his condition, and consulted six experts to obtain their professional opinions on [Plaintiff's] claim, including two board certified neurologists, a physician board certified in physical medicine and rehabilitation, two board certified neuropsychologists, and a vocational specialist." (Second Mot. at 9).

7

term of a contract, that party cannot be found separately liable for breaching the implied covenant of good faith and fair dealing 'when the two asserted breaches basically rest on the same conduct.'" *Id.* at *3 (quoting *Wade v. Kessler Inst.*, 798 A.2d 1251, 1261 (2002)); *see also id.* ("Even if plaintiff had adequately pled an implied covenant/bad faith cause of action, his claim would be dismissed as duplicative of his breach of contract action.").

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing repackages the allegations underpinning his claims for both bad faith in Count II and breach of contract in Count I. All three claims arise from the same allegation: Defendant's denial of Plaintiff's benefits claim and the subsequent non-payment of the insurance policy. *See, e.g.*, (Am. Compl. ¶ 80–81 (stating, *inter alia*, that "Defendant breached its duty to Plaintiff by denying payment of individual disability income benefit to Plaintiff" and "Defendant breached its duty when denying Plaintiff's claim for Individual Disability Insurance Benefit payments")). Because we find Count III to be duplicative of the claims alleged in Counts I and II, *see Veyhl*, 2021 WL 6062304, at *3; *Wade*, 798 A.2d at 1261, we dismiss Count III for the same reasons.

    **C.**    **Count IV: Intentional Infliction of Emotional Distress**

Plaintiff also fails to adequately plead a claim for intentional infliction of emotional distress (IIED). To bring an IIED claim under New Jersey law, a plaintiff must show that the defendant intended both to do the act and to produce emotional distress, or else acted recklessly in deliberate disregard of a high degree of probability that emotional distress would follow. *Shan v. United Airlines*, Civ. No. 21-20357, 2022 WL 4596722, at *6 (D.N.J. Sept. 30, 2022) ("[T]he emotional distress must meet an elevated threshold which is only satisfied in extreme cases"). Specifically, the plaintiff must allege "conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

8

utterly intolerable in a civilized community.'" *Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 316 (D.N.J. 2016) (quoting *Subbe–Hirt v. Baccigalupi*, 94 F.3d 111, 114 (3d Cir. 1996) (citing Restatement (Second) of Torts § 46 comment d)).

Under New Jersey law, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002). In the context of insurance claims, New Jersey courts are consistent that "absent egregious circumstances, no right to recover for emotional distress . . . exists for an insurer's allegedly wrongful refusal to pay a first-party claim." *Pickett*, 621 A.2d at 455 (citing *Ellmex Constr. Co. v. Republic Ins. Co.*, 494 A.2d 339 (N.J. Super. Ct. App. Div. 1985), *certif. denied*, 511 A.2d 639 (N.J. 1986); *Garden State Community Hosp. v. Watson*, 465 A.2d 1225 (N.J. Super. Ct. App. Div. 1982).

Plaintiff contends that Defendant acted in deliberate disregard of a high degree of probability that Plaintiff's emotional distress would follow by denying payment of his insurance benefits. (Am. Compl. ¶ 92). Plaintiff also states that in view of "all of the medical evidence in support of Plaintiff's continued total disability," Defendant acted recklessly when denying the claim. Plaintiff likewise alleges that the denial of his claim amounted to extreme and outrageous conduct sufficient to meet the elements of an IIED claim. (*Id.* ¶ 96).

As Defendant argues, however, Defendant's decision to deny Plaintiff's claim is not on its own atrocious and intolerable conduct. *See* (Second Mot. at 24). Although the Court recognizes that Plaintiff suffered as a result of his accident, Plaintiff's allegations that Defendant recklessly or intentionally caused Plaintiff emotional distress by denying his claim are merely conclusory. *See Iqbal*, 556 U.S. at 678. Nor does Defendant's simple denial of Plaintiff's claim rise to the level of extreme or outrageous conduct, *see Edmond*, 171 F. Supp. 3d at 316, or the

kind of rare and "egregious circumstances" that might warrant recovery for emotional distress in the insurance contract context. *See Pickett*, 621 A.2d at 455. Because we find that Plaintiff fails to plead the requisite elements for an IIED claim, Count IV is also dismissed.

### D. Count V: New Jersey Consumer Fraud Act

Lastly, we turn to Plaintiff's claim under the New Jersey Consumer Fraud Act (CFA), N.J. Stat. Ann. § 56:8-2. To state a claim under the CFA, the plaintiff must allege that: (1) the defendant engaged in an unlawful practice; (2) the plaintiff suffered an ascertainable loss; and (3) there exists a causal relationship between the defendant's unlawful practice and the plaintiff's loss. *Veyhl*, 2021 WL 6062304, at *4 (citing *Frederico v. Home Depot*, 507 F.3d 188, 202–03 (3d Cir. 2007)). An "unlawful practice" is defined in the CFA as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person . . . .

N.J. Stat. Ann. § 56:8-2 (West 2022). Additionally, CFA claims are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Veyhl*, 2021 WL 6062304, at *4; *see also Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012) (recognizing that Rule 9(b)'s heightened pleading requirements apply to CFA claims).

It is well-settled in this Circuit that "payment of insurance benefits is not subject to the CFA." *Veyhl*, 2021 WL 6062304, at *4 (citing *Vanholt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998)). Put another way, the "mere denial of insurance benefits to which the plaintiffs believed they were entitled does not comprise an unconscionable commercial practice" under the CFA. *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998); *see*

10

*also Jones-Singleton v. Illinois Mut. Life Ins. Co.*, Civ No. 19-14220, 2020 WL 1243910, at *7 (D.N.J. Mar. 13, 2020) (granting defendant's motion to dismiss because "the weight of New Jersey case law is that the payment of insurance benefits is not subject to the CFA").

Plaintiff's CFA claim is based entirely on the non-payment of insurance benefits. Plaintiff alleges that Defendant's issuance of the Policy constitutes a "commercial practice" under the CFA and that its subsequent denial of Plaintiff's claim amounted to an "unlawful" and "unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation" under the statute. (Am. Compl. ¶¶ 103–05). Plaintiff further alleges that Defendant "used deception in the advertisement of its insurance products in order to persuade Plaintiff to purchase the Policy and continue payment of the premiums" and engaged in "false promises and misrepresentations" relating to the issuance of the Policy, collection of premiums, and evaluation of Plaintiff's claim. (*Id.* ¶¶ 108–09). Specifically, Plaintiff alleges that Defendant's fraud includes:

> failing to provide Plaintiff with a full and fair review of his claim, failing to consider the impact of Plaintiff's physical and mental conditions and limitations on his ability to perform the duties of his regular or any occupation, refusing to consider Plaintiff's credible subjective complaints about his inability to work, relying upon a selective review of medical records to reach a result oriented claim determination, failing to utilize appropriately qualified and unbiased medical personnel to reach decisions and/or render opinions on levels of impairment, relying on biased and/or flawed vocational consideration on Plaintiff's claim, and failing to perform a fair and neutral evaluation of Plaintiff's medical condition and associated restrictions and limitations.

(*Id.* ¶ 107).

To be sure, the Court recognizes that Plaintiff likely suffered an "ascertainable loss" as a result of the denial of his claim. *See* (Am. Compl. ¶ 110). But, again, any loss that may have occurred as a result of the Policy's terms is more appropriately evaluated in the context of Plaintiff's breach of contract claim. Although the denial of Plaintiff's insurance benefits under

11

the Policy is itself a well-pleaded fact, Third Circuit precedent is clear that the CFA does not encompass the "mere denial of insurance benefits."[4] *See Van Holt*, 163 F.3d at 168. Accordingly, because Plaintiff fails to plead a claim under the CFA, we dismiss Count V.

## V. CONCLUSION

For these reasons, Defendant's First Motion to Dismiss (ECF No. 15) is **DISMISSED AS MOOT**. Defendant's Second Motion to Dismiss (ECF No. 18) is **GRANTED**. An Order follows.


Dated: March 18, 2024                           /s/ Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United States District Judge

---

[4] Even if the denial of insurance benefits did fall within the ambit of the CFA under Third Circuit precedent, Plaintiff fails to plead Defendant's fraudulent activity with sufficient specificity under Rule 9(b)'s heightened pleading standards. *See* Fed. R. Civ. P. 9(b); *Veyhl*, 2021 WL 6062304, at *4; *Mickens*, 900 F. Supp. 2d at 435. Here, Plaintiff's litany of examples of Defendant's allegedly fraudulent behavior, (Am. Compl. ¶ 107), are only conclusory allegations that cannot survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.